| | |
|---|---|
| 1 | |
| 2 | LINGEL H. WINTERS, ESQ. (SBN 37759)<br>LAW OFFICES OF LINGEL H. WINTERS |
| 3 | A PROFESSIONAL CORPORATION<br>One Maritime Plaza, Suite 400 |
| 4 | San Francisco, CA 94111<br>Telephone:    (415) 398-2941 |
| 5 | Facsimile:     (415) 393-9887 |
| 6 | GIRARDI & KEESE<br>THOMAS V. GIRARDI (SBN 36603) |
| 7 | 1126 Wilshire Blvd.<br>Los Angeles, CA 90017-1904 |
| 8 | Telephone (213) 977-0211 |
| 9 | Attorneys for Plaintiff and the Putative Class |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | MDL No. M:07-cv-01827 SI<br><br>Case No. 07-cv-2796 SI<br><br>**CLASS ACTION** |
| *EMW, Inc. v. LG Philips LCD CO., LTD et al.*<br>Case No. C-07-2796 SI<br><br>THIS DOCUMENT RELATES TO<br><br>ALL INDIRECT PURCHASER ACTIONS | REPLY MEMORANDUM TO OPPOSITION TO MOTION TO APPOINT INTERIM CLASS COUNSEL FOR THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP AND MOTION TO SHORTEN TIME<br><br>Date: July 10, 2007<br>Time: 10:00 a.m.<br><br>Hon. Susan Illston<br>Courtroom: 10 |

1

REPLY MEMORANDUM TO OPPOSITION TO MOTION TO APPOINT INTERIM CLASS COUNSEL FOR THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP

## I. The Substantial Claims Of The California Putative Class Call For Independent Representation

This is a Reply Memorandum to the Opposition to EMW, Inc's Motion For Appointment As Counsel For California Indirect Purchaser Subgroup. Our Motion is brought in a collegial spirit, not an adversarial one, for our ultimate goals are the same. In *Klay v. Humana, Inc.* 382 F.3d 1241 (11th Cir. 2004), the lead case cited by Mr. Lehmann's Opposition ("Lehmann"), the Court "affirm[ed] the district court's certification of the plaintiff's federal claims [RICO and ERISA]...and reverse[d] the district court's certification of the plaintiff's state claims," (at p.1246) despite allegations of a nationwide conspiracy by HMOs to underpay doctors. The *Klay* court found that counsel's failure to address "groupability" through subclassing doomed all of the state claims except the unchallenged California Subclass, but the *Klay* Court recognized that state law subclasses could have been certified based on "groupability," - "showing uniformity or the existence of only a small number of applicable standards...among the laws of the fifty states...," stating (at p.1262):

> "Similarly, if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the applicable legal standards can be appropriate. *See e.g. Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (holding that class certification is appropriate where 'variations [in state law] can be effectively managed through creation of a small number of subclasses grouping the states that have similar legal doctrines'). In such a case, of course, a court must be careful not to certify too many groups.

2

1   If more than a few of the laws of the fifty states differ, the judge would face
2   an impossible task of instructing a jury on the relevant law... *In re Am. Med. Sys.,*
3   75 F.3d 1069, 1085 (6th Cir. 1996)."

4   Certification of an unchallenged California Subclass was left standing. That the substantial
5   California Subclass was the only state law class left standing in *Klay v. Humana, Inc., supra,*
6   indicates that California Indirect Purchasers would be well served to have independent
7   interim counsel. By contrast, in the instant case, natural subclassing is established in the
8   *Eliasoph* complaint: 1) California-Second and Third Claims 2) Other State Antitrust Claims-
9   Fourth Claim and 3) Other State Consumer Claims-Fifth Claim. Since California represents
10  at least 35% and probably 50% of the repealer state populations and substantial potential
11
12  claims, it deserves to be independently represented. The recovery for California claimants in
13  *In re Microsoft* was valued at $1,1 Billion, and Mr. Girardi obtained a $1.87 Billion
14  settlement for California ratepayers in the *Sempra Energy Case* and a $1.5 Billion recovery
15  for California rate payers in the *El Paso Natural Gas Case.*
16

17   Absent employment of the "groupability," doctrine, the Seventh Circuit in *the Matter of*
18  *Rhone-Poulenc* 51 F.3d 1293, 1300 (7th Cir. 1995) reversed the certification of a nationwide
19  class of product negligence claimants under state laws over concerns about manageability and
20  varying jury instructions regarding Duty of care, foreseeability, and proximate cause (at p. 1300).
21  The court in *Castano v. American Tobacco Company* (5th Cir. 1996)] 84. F.3d 734, at 741 noted:
22
23  "In a multi-state class action, variations in state law may swamp any common issues and defeat
24  prominence."

25   Mr. Lehmann string-cites dicta in *Diamond Multimedia Sys. v Superior Court* 19 Cal.4[th]
26  1036 (1999) (out-of-state shareholders *of a California corporation* have standing to sue under
27  the California securities law for stock manipulation done in *California; Werbsha v Apple*
28

3
REPLY MEMORANDUM TO OPPOSITION TO MOTION TO APPOINT INTERIM CLASS COUNSEL FOR
THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP

1  *Computer, Inc.*, 91 Cal. App.4th 224 (2001), *review denied* (involving a settlement class); and

2  *Clothesriggrer, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (reversing a class action certification)

3  for the hope, without elaboration of certifying a 50-state class action under California law. But

4  Judge Claudia Wilken ruled in *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899 at

5

6  *4 (N.D. June 11, 2007), cited by Mr. Lehmann, ruled that "California's Unfair Competition

7  Law does not apply to actions occurring outside of California that injure non-residents.

8  *Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.* 405 F. Supp.2d 1141,

9  1148 (C.D. Cal. 2005), *see also Norwest Morgtage, Inc. v. Superior Court* 72 Cal. App. 4th 214,

10  226 (1999)." Accord: *Churchill Village, LLC v. General Electric Co.* (N.D. Cal. 2000)

11  In *Relafen Antitrust Litigation* 221 F.R.D. 260 (D. Mass. 2004), cited by Mr. Lehmann, the

12

13  Court rejected extraterritorial application of state antitrust laws, stating (at p. 277): "the more

14  significant contact…is the location of the sales to the end payor plaintiff... Applying

15  Pennsylvania law to these wholly out-of-state transactions would be at best 'a novelty' and at

16  worst a violation of constitutional limitations. *Bridgestone/Firestone,* 288 F.3d at 1016; [*Phillips

17  Petroleum v.*] *Shutts* 472 U.S. 797, at 822, 105 S.Ct. 2956, 86 L.Ed.2d 628 (1985); *In re Brand

18  Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997)" and (at p.278)

19  "States have a strong interest in protecting consumers with respect to sales within their

20  borders…but they have a relatively weak interest, if any, in applying their policies to consumers

21

22  or sales in neighboring states, *see BMW of North America, Inc. v. Gore* 517 U.S. 559, 571, 116

23  S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("[I]t is clear that no single State could …impose its own

24  policy choice on neighboring States.")." Thereafter the *Relafen* Court analyzed and excluded

25  claimants under the laws of the District of Columbia ("requires injury to each class member" at

26  p. 280), Maine (requires a separate level of evidence and proof 'demonstrating that overcharges

27  had been passed on to consumers" at p. 281) Michigan (case law requires "a rigorous analysis of

28

4

REPLY MEMORANDUM TO OPPOSITION TO MOTION TO APPOINT INTERIM CLASS COUNSEL FOR
THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP

1  individual impact resulting in certification denials at p.281), and concluded "Because the end
2  payor plaintiffs had not made the stronger showing deemed necessary under the indirect
3  purchaser statutes of Florida, Maine, Minnesota, and Michigan payor plaintiffs from these states
4  were excluded from the exemplar classes." (at 221 F.R.D. p.283). Kansas plaintiffs were
5
6  excluded due to the requirement for individualized statute of limitations determinations,
7  Tennesse plaintiffs were excluded as to unfair competition claims under Tennessee case law at
8  p.284; New York claims under the Donnelly Act were excluded under case law precluding class
9  actions (at pp.284-286) and New York consumer protection act were excluded under case law
10 requiring waiver of minimum and treble damages, which raised questions as to adequacy of
11 representation. (at p.286). Having performed this rigorous analysis, the Court certified a narrow
12 class of persons who purchased Relafen in Arizona, California Massachusetts or Vermont as to
13
14 antitrust and consumer protection laws and Arizona, California, Massachusetts, Tennessee or
15 Vermont as to unjust enrichment. Had the excluded states had interim counsel, the result may
16 well have been different. Contrary to the rigorous analysis by the Massachusetts district court in
17 *Relafen, supra,* the Southern District of Florida in *In re Terazosen Hydrochoride* took plaintiff's
18 word for it that "Indirect Purchaser Plaintiffs have cited case law under each state antitrust law
19 interpreting the acts coextensively with the federal antitrust laws," and, certified seventeen
20 separate State-Wide Classes of drug End-Payors in Alabama [DE-453], California [DE-452],
21
22 Florida [DE-450]. Illinois [DE-464, Kansas [DE-463], Maine[DE-462], Michigan-DE-461] ,
23 Minnesota [DE-460], Mississippi [DE-459], Nevada [DE-458, New Mexico [DE-455], New
24 York [DE-456], North Carolina [DE-454], North Dakota [DE-465, South Dakota [DE-466],
25 West Virginia [DE-467, and Wisconsin [DE-468]" while denying claims relative to the District
26 of Columbia and New Jersey.
27
   In *In re Pharmaceutical Industry Average Wholesale Price Litigation* 233 F.R.D. 229
28

(D.Mass. 2006), the Court certified 1) a Co-Payment Class with four Subclasses with separate subclass representatives for each relative to Medicare Part B co-payments, excluding residents of "Alabama, Alaska, Georgia, Iowa, Kentucky, Louisiana, Mississippi, Montana and Virginia (where consumer protections statutes do not permit class actions." (at p.230); 2) A Third-Party Payor Medigap Class with two class representatives under Massachusetts law (at p.231); and 3) A Consumer and Third-Party Payor Class for Medicare Part B with Five Subclasses and two class representatives. Although these are state law claims, there is an unspoken sense that the claims deal with an overriding federal program: Medicare.

We support Mr. Lehmann's plan for a multi-state effort, but believe that subclassing under the doctrine of "groupability" would enhance these efforts, and would also welcome the opportunity to serve on a unified Executive Committee.

Mr. Lehmann cites *Hanlon v. Chrysler Corporation* 150 F.3d 1011 (9th Cir. 1998), which involves a settlement-only class, that deals with allegedly defective rear liftgate latches that were the subject of various state court actions in which counsel were separately appointed by state courts for each state case. In addressing the settlement class, the *Hanlon* court stated:

> Approximately two weeks before it announced the NHTSA-approved Service Action, Chrysler and counsel from the various state actions began serious settlement discussions, which continued throughout April, May and June 1995. As a result of the settlement discussions, all of the state class actions were Consolidated in one large national class action in federal court...Three days after filing the case, the parties submitted a settlement agreement to the court for approval.."

Thus, in *Hanlon, supra,* the cases proceeded as state cases under the jurisdiction of state courts with counsel appointed for each state's claimants by the state courts. It was not until a settlement

was achieved that a consolidated federal complaint was filed and the only class certification was for the settlement class. Because of these facts, variances in state law were not a factor since a settlement was achieved without motion practice or trial addressing state law variations.

*In re Cardizen CD Antitrust Litigation* 218 F.R.D. 508, 518 (E.D. Mich. 2003) involves the certification of a settlement class in which the Court states at p. 518: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems..." citing *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 619, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Since manageability is a key reason for a rigorous evaluation as to the variation in state claims and subclassing by "groupability," *Cardizen, supra,* which by-passed the manageability issue is inapposite. The cases cited by Mr. Lehmann,[1] that have distinguished *Amchem, supra,* are generally settlement cases where manageability is not an issue. By contrast we are at the inception of this case where the Court can use its discretion to reduce potential conflicts and enhance the manageability of this case by inclusion of diversity in the range of counsel and by subclassing.

Likewise, *In re Warfarin Sodium Antitrust Litigation* 212 F.R.D. 231 (D.Del. 2002) is a settlement-only class certification. In *Warfarin, supra,* the Court stressed that because a settlement class is different, it requires no subclassing of claims, stating at p. 251:"While some courts in similar cases have certified consumers and TPPs as separate classes or subclasses, there does not appear to be any compelling reason to require separate classes or subclasses here in the context of settlement."

---

[1] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268-69 (2d Cir. 2006) (RICO settlement); *Uhl v. Thoroughbred Technology & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002)(settlement); *In re Diet Drugs Prods. Liability Litig.*, 282 F.3d 220, 230-231 (3d Cir. 2002)(settlement); *Joel A. v. Giuliani*, 218 F.3d 132, 139-40 (2d Cir. 2000)(settlement); *In re Phenylpropanolamine (PPA) Product Liability Litig.*, 227 F.R.D. 553, 562-63 (W.D. Wash. 2004).

1   Mr. Lehmann cites *Schumacher v. Tyson Fresh Meats, Inc.* 221 F.R.D.605 (D.S.D. 2004), but the primary claim in that case for beef price overcharges was for unfair or deceptive practices of the federal Packers and Stockyards Act ("PSA") 7 U.S.C.A. sec. 181-229 with a secondary claim of unjust enrichment. The Court certified a settlement class relative to a federal claim under the PSA as well as a secondary claim for unjust enrichment. *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899 at *4 (N.D. June 11, 2007), cited by Mr. Lehmann, involved a federal Sherman Act monetary claim to which various state claims were appended, which is doubtless the reason no separate representation for state subclasses was even discussed. Moreover, in the absence of a motion, it is unlikely that a court will reach out and appoint state subclass counsel.

Mr. Lehmann seems to imply that even if the variation among state antitrust laws and consumer protection statutes were too great for certification, solace could be found in the unjust enrichment claims alone. Doubtless, California claimants would prefer the protection of a California Cartwright Act subclass. But unjust enrichment claims, as in *Schumacher, supra,* are generally back-up secondary claims to more substantial statutory claims such as the federal PSA, and unjust enrichment claims only provide for restitution. (Rest. Restitution sec.1; *Kossian v. American Nat. Ins. Co.* (1967) 254 Cal. App.2d 647, by contrast to treble damages under the California Cartwright Act, Bus. & Prof. C. Sec. 16750 *et seq.* However, *Klay v. Humana, Inc., supra,cited*, cited by Mr. Lehmann, specifically rejected an attempt to restate the state claims as unjust enrichment claims as being merely an alternative statement of the non-certified state claims. (at p. 1267).

It is respectfully requested that the Court grant the Motion To Appoint Interim Class Counsel For the California Indirect Purchasers Subgroup.

//

//

## II. Girardi & Keese and Winters Have the Experience and Qualfications To Adequately Serve As Interim Counsel For A California Subgroup Of Indirect Purchasers

First, class counsel's competency and adequacy is presumed absent specific proof to the contrary. *Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632*5 (S.D.N.Y. 1992). Second, Mr. Girardi, former President of the International Academy of Trial Lawyers and of the American Board of Trial Advocates, who has tried over 100 jury cases to conclusion, has been appointed lead counsel in numerous class action cases. The most notable is the *Sempra Energy* case on behalf of the rate payers of California, which resolved two months into trial for $1.87 Billion, personally negotiated by Mr. Girardi with the Chairman of Sempra Energy. Before that, Mr. Girardi was lead attorney in the *El Paso Natural Gas* case, which was also brought in behalf of California rate payers, which settled for $1.5 Billion. (See *Curriculum Vitae* of Thomas V. Girardi attached as Ex. B to the Declaration of Lingel H. Winters In Support of Motion to Appoint Interim Class Counsel For the California Indirect Purchasers Subgroup). Mr. Girardi is the senior partner of Girardi & Keese, a 21 member plus Los Angeles trial law firm with a wide range and depth of class action experience. For instance, Mr. Girardi's partner, J. Paul Sizemore, Esq. is a member of the Bextra/Celebrex MDL – Plaintiff's Steering Committee and Expert Chair of the Vioxx MDL-Science. Another of Mr. Girardi's partners, Howard Miller, specializes in Antitrust, Unfair Competition and Intellectual Property litigation. Further, as a Los Angeles based law firm, Girardi & Keese extend the base of California representation to Southern California.

Lingel H. Winters was a member of the plaintiff' Executive Committee in *In re Microsoft I-V Cases* J.C.C.P. No. 4106, 135 Cal. App.4th 706, which settled for a recovery valued at $1.1

Billion.[2] He has tried numerous high technology cases, including a 3 ½ month patent-antitrust trial in this district and been on the steering committee of various other antirust cases. Technologies litigated by Mr. Winters include dual slope analog to digital converters, computers and software, semiconductors, accelerometers used as sensors for controlling missiles and aircraft, equipment for manufacturing semiconductors, medical applications, fire detectors used on the Boeing 727, and intrusion detection sensors. (See Resume attached as Ex. C to the Declaration of Lingel H. Winters In Support Of Motion To Appoint Interim Class Counsel For the California Indirect Purchasers Subgroup). Girardi & Keese and Winters submit that they have the experience and qualifications to serve as interim class counsel for the California Subgroup of Indirect Purchasers.

**CONCLUSION**

It is respectfully requested that the Court grant the Motion To Appoint Interim Class Counsel For the California Indirect Purchasers Subgroup, and/or appoint Girardi & Keese and Winters to any Indirect Purchaser Executive Committee.

Dated: June 29, 2007           GIRARDI & KEESE

                               By:/s/ Thomas V. Girardi


                               LAW OFFICES OF LINGEL H. WINTERS P.C.

                               By:/s/ Lingel H. Winters

---

[2] Since Mr. Lehmann was not a member of the California Microsoft Executive Committee, his unsworn statements regarding the roles of counsel in Microsoft are objected to for lack of foundation and competence.

## CERTIFICATE OF SERVICE

I, **LINGEL H. WINTERS**, declare as follows:

I am a citizen of the United States of America, over the age of eighteen (18) years and not a party to or interested in the within entitled cause, that I am an attorney and my business address is One Maritime Plaza, Suite 400, San Francisco, CA 94111.

On the date hereon, I deposited one (1) copy each of the within:
**REPLY MEMORANDUM TO OPPOSITION TO MOTION TO APPOINT INTERIM CLASS COUNSEL FOR THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP**

I caused the above document to be served on each person by the following means.

[ ]    [BY MAIL] I am "readily familiar" with the firm's practice of collection and processing correspondence by mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    [BY ECF] By USDC Live System-Document Filing System: on all interested parties registered for e-filing.

[ ]    [BY TELECOPY] BY STIPULATION I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]    [BY PERSONAL DELIVERY] I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]    [BY FEDERAL EXPRESS] I caused such envelope to be delivered by Federal Express to the offices of the addressee.

[X]    [STATE] I declare under penalty of perjury under the laws of the State of California that the statements herein are true and correct.

[X]    [FEDERAL] I declare that I am employed in the offices of a member of this court at whose direction the service was made.

Executed on June 29, 2007 in San Francisco, California.

/S/_____Lingel H. Winters_____